ANTON PETERSON, DEFENDANT IN ERROR, v. AMERICAN ICE COMPANY, PLAINTIFF IN ERROR.

Submitted March 25, 1912—Decided June 20, 1912.

Where the plaintiff, a carpenter of experience, was employed to repair a pitched roof upon defendant's shed, and, having worked thereon for two days, upon the third day slipped upon snow and ice, which collected while he was working, and fell from the roof, injuring himself—*Held,* that the danger incident to the snow and ice upon the roof was as obvious to the plaintiff as to the master, and was a risk assumed by the plaintiff in the performance of his work.

On error to the Supreme Court.

For the plaintiff, defendant in error, *Wescott & Wescott.*

For the defendant, plaintiff in error, *Carrow & Kraft.*

The opinion of the court was delivered by

MINTURN, J. While working at his employment as a carpenter engaged in constructing a new roof upon defendant's coal shed in Camden, the plaintiff slipped and fell from the roof, sustaining the injuries which present the basis for this suit, and for which he recovered a verdict at

the circuit. He had been engaged at his trade for ten years, and had worked on the roof in question for two days prior to the accident.

On the morning of the accident it began to snow, and at noon, when the plaintiff was directed by the foreman to finish the work, there was about an inch of snow upon the roof. He worked there until between three and four o'clock when he slipped and fell. He testified that he saw no ice there; that it was not freezing, and that the weather was inclined to be mild. The roof was pitched slightly, and there was nothing incident to the work at the time to indicate to the plaintiff a dangerous condition, and he admitted that he was used to working under such conditions.

A witness for the plaintiff, a fellow worker, testified that there was not enough snow upon the roof to trouble them, and that he saw no ice upon the roof until after the plaintiff fell.

The defendant met this situation with proof that there was no ice upon the roof.

The legal question involved as to the master's liability, under these circumstances, was raised upon a motion to nonsuit, and a motion to direct a verdict, both of which motions were refused by the trial court, and the case is here upon exceptions to those rulings.

The claim of the plaintiff is predicated upon the contention, as outlined in the brief, that, if the plaintiff did not know of the existence of the ice under the snow upon the roof, and could not by the exercise of reasonable care, discern it; and that if the defendant by the exercise of reasonable care could have known of the ice so hidden and failed to possess himself of that knowledge, the defendant is liable for the damage.

It is difficult to perceive how liability can be imposed upon the master for a failure to discover a condition which it is conceded was not within the power and trained experience of the plaintiff to observe and discover, and which, in the legal postulate advanced to support the action, could not be discovered by him in the exercise of reasonable care.

The argument, in effect, superimposes upon the master the possession of a power of vision and a faculty of discernment and foresight to observe danger, which it denies to the servant, and therein lies its fallacy as a legal contention. The negligence of the master, if it exist, must be predicated upon the neglect to observe some duty cast upon it by the law, and in this case it is difficult to perceive what the duty was. If it be said that the obligation was to give the employe a safe place wherein to work that duty was discharged in legal contemplation when the plaintiff, knowing from years of experience the nature of the work, and the dangers incident to it, and having the same opportunities of observation to say the least, as the master, undertook to perform the work in which the danger of slipping by accident in inclement weather naturally inhered in the discharge of the employment, and entered as a factor in the contract between the parties.

The risk the plaintiff took, therefore, in working upon the roof under such conditions, was necessarily an obvious risk, inherent in the nature of his employment and assumed by him as *quid pro quo* for the compensation he received. *McAndrews* v. *Burns,* 10 *Vroom* 120; *Caffrey* v. *Hedden & Sons,* 50 *Id.* 556.

Underlying the doctrine of assumption of risk by an employe is the basic maxim *volenti non fit injuria.* Lord Herschell, upon the philosophy inherent in this maxim, applied it in *Smith* v. *Baker* (1891), *A. C.* 325, 360, and in his opinion states a hypothetical case where one agreed to take part in an operation necessitating the production of gaseous fumes injurious to health.

It was also held to apply under the common law relationship, but inapplicable under the English Employers' Liability act of 1880, in *Thomas* v. *Quartermaine,* 18 *Q. B. D.* 685; and that case was followed and the same rule applied in *Baddely* v. *Granville, Id.* 423.

The learned editor of the *English Ruling Cases* states the modern application of the rule to be that, "If the danger is

as well known or as manifest to the servant as to the master, the servant enters or continues in the employment at his own risk." 17 *Eng. Rul. Cas.* 239, citing *Ladd* v. *New Bedford Railway Co.,* 119 *Mass.* 412.

The modern cases illustrative of the application of this principle are collected in valuable reference notes in 7 *Am. & Eng. Anno. Cas.* 430, and volume 12, page 621 of the same work.

The most recent authoritative pronouncement upon this subject by this court is the case of *Mika* v. *Passaic Print Works,* 47 *Vroom* 561, where the authorities in this state are collected by Judge Vroom in his opinion, and the doctrine enunciated that the rule of assumption of obvious risk by an employe exists in this state notwithstanding the dereliction of a statutory duty upon the part of the employer, which duty was superimposed as a safeguard for employes under the provisions of the Employers' Liability act of 1904.

The line of divergence between the English courts and the law in this state, as settled in the Mika case, arises, it will be perceived, entirely out of the effect to be given to the statutory duty imposed upon the master; but, as that question does not enter into this decision, it is sufficient to say that the common law doctrine as herein outlined and illustrated by what may be said to be an uniformity of decision but at times a divergence of view in its application, precludes a recovery in this case.

The judgment under review will be reversed.

*For affirmance*—None.

*For reversal*—THE CHIEF JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, VOORHEES, MINTURN, KALISCH, BOGERT, VREDENBURGH, VROOM, CONGDON, WHITE, TREACY, JJ. 15.